IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Vince Mastriani, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case 14 CV 6800 |
| | ) |
| Chicago Transit Authority, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

In this action, plaintiff—a former Bus and Truck Mechanic for defendant Chicago Transit Authority (the "CTA")—claims that after a work injury to his back left him unable to work for a period of time, he was medically cleared and able to return to work, with restrictions, in June of 2012. He asserts that the CTA denied his request for reasonable accommodations consistent with those restrictions, which would have allowed him to perform the essential functions of his job, and instead terminated him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5) (the "ADA"). Before me is defendant's motion for summary judgment, which I deny for the following reasons.

I.

The undisputed record establishes that plaintiff was working as a Bus and Truck Mechanic for the CTA until 2004, when he injured his back on the job. Plaintiff was unable to work for approximately one year, during which time he received medical care and took narcotic pain medications on a daily basis.

Plaintiff returned to work in September of 2005 with work restrictions of no excessive bending and twisting. Plaintiff continued to take controlled pain medications at the time. Neither his back condition nor his restrictions affected the way plaintiff performed his duties, but in November of 2007, he began having back spasms related to his original injury. Plaintiff reported these spasms to his supervisor, Mark McGinnis, explaining that "the medication wasn't working as well." Mastriani Dep. at 58:18-19, Pl.'s L.R. 56.1 Stmt., Exh. A. This prompted McGinnis to ask what medications plaintiff was taking, and to inform plaintiff, in response to his answer, "you can't take that while you're at work." *Id*. at 58:21. Defendant explains that a Bus and Truck Mechanic is a "safety sensitive" position within the CTA, which meant that plaintiff was prohibited by Department of Transportation regulations from

working while taking narcotic medications. Cobb Dep. at 57:17-58:2, Def.'s L.R. 56.1 Stmt., Exh. B.[1]

Plaintiff did not return to work after his conversation with McGinnis, and on approximately November 7, 2007, he received a letter from defendant notifying him that he had been placed in "Temporary Medical Disability/Area 605," a status that allowed him to remain employed while not actively working and to treat his medical condition. Although the face of the letter states that plaintiff was allowed to remain in "TMD" for two years from his last day worked, with the possibility of a one-year extension, the parties agree that plaintiff remained in Area 605 for almost five years, until July of 2012. Mastriani Dep., Pl.'s L.R. 56.1 Stmt., Exh. A at Exh. 1.

By letter dated May 29, 2012, defendant informed plaintiff that he had been in Area 605 in excess of the time allowed, and that he was required either to return to active employment status by July 2, 2012; to be administratively separated; or to elect one of several additional options, which included accepting a disability pension or taking early retirement, among others. Mastriani Dep., Pl.'s L.R. 56.1 Stmt., Exh. A at Exh. 3. In response to that letter, plaintiff visited his personal

---

[1] Plaintiff does not dispute that his position was "safety sensitive," but he asserts that he was never told that that meant he was prohibited from taking narcotics while working. Pl.'s L.R. 56.1 Stmt. at ¶ 10.

3

physician, Dr. Heyer, who filled out a physical capacities evaluation form and also wrote a letter stating that plaintiff was medically cleared for work with enumerated restrictions. *See id*. at Exhs. 5, 4. Those restrictions were: 1) no repetitive trunk function and no repetitive trunk rotation; 2) accommodation to allow plaintiff to wear a TENS unit[2] at all times while at work; 3) allowing plaintiff to take certain doses of Ibuprofen and acetaminophen while at work; and 4) allowing plaintiff to take controlled pain medication at home after work, but not immediately prior to or during work. *Id*. at Exh. 4. In addition, Dr. Heyer indicated on the physical capacities evaluation form that plaintiff could lift a maximum of 40 pounds occasionally, and that he could kneel, squat, crawl, and walk on uneven ground or an elevated structure occasionally. *Id*. at Exh. 5.

Plaintiff submitted Dr. Heyer's letter to the CTA's Accommodations Review Committee ("ARC"), whose three voting members—Larry Wall, Cara Levinson, and a third individual whose identity no one recalls, but who all agree would have come from plaintiff's job site and been familiar with his position-- reviewed plaintiff's restrictions to determine if he could

---

[2] Plaintiff explains that a TENS unit is "an electrical device you wear on your belt and it has suction cups that stick to your back and it's a stimulator, electric shock stimulator, and it's supposed to help loosen muscles and stuff." Mastriani Dep. at 69:22-70:2.

4

return to work. Anna Cobb, defendant's benefits compliance manager, also attended the meeting, although she was not a voting member of the ARC. Cobb testified that of the four restrictions enumerated in Dr. Heyer's letter, the only one that the committee considered to pose a problem was the first: no repetitive trunk function and no repetitive trunk rotation. Cobb Dep. at 38:1-40:12, 44:2-22. Def.'s L.R. 56.1 Stmt., Exh. B. Wall and Levinson both stated that they did not remember plaintiff or the specifics of his accommodation request, *see* Wall Dep. at 38:6-40:14, Def.'s L.R. 56.1 Stmt., Exh. C; Levinson Dep. at 42:13-23, Def.'s L.R. 56.1 Stmt., Exh. F, but Levinson agreed that the no repetitive trunk function or rotation restriction was the only one that would have posed an accommodation problem. Levinson Dep. at 45:5-48:4. All three members of the ARC voted to deny plaintiff's request for accommodation.

III.

The ADA requires an employer to make reasonable accommodations that will allow a "qualified individual with a disability" to "perform the essential functions of his or her job." 42 U.S.C. § 12112(b)(5)(A). To state a prima facie failure to accommodate claim, plaintiff must identify evidence from which a reasonable jury could conclude: 1) that he is a qualified individual with a disability; 2) that CTA was aware of

5

his disability; and 3) that CTA failed to reasonably accommodate the disability. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008). Defendant argues that undisputed evidence shows that plaintiff cannot establish the first or the third of these elements.

With respect to the first element, defendant argues that plaintiff was not disabled because he admits that he could perform major life activities such as sitting, standing and walking, and that he could groom himself, perform household chores, and engage in recreational activities such as golfing and camping, without limitation. It is true that plaintiff testified at his deposition that in 2012, his medical condition did not limit his ability to walk, sit, or stand. Mastriani Dep. at 109:2-15, Pl.'s L.R. 56.1 Stmt., Exh. A. Plaintiff later clarified in his declaration, however, that he could do these things only while taking narcotic pain medication and using the TENS unit. Defendant urges me to disregard the declaration as self-serving and contradictory to plaintiff's deposition testimony, but there is nothing inherently wrong with a self-serving declaration, *see Hill v. Tangherlini*, 724 F.3d 965, 967 and n. 1 (7th Cir. 2013), and I agree with plaintiff that the statements he makes in it do not directly contradict his deposition testimony. Defendant does not argue that if plaintiff's declaration is considered, a reasonable jury still

6

could not find that his back injury substantially impaired a major life activity, so I move on to defendant's next argument. *See Carter v. Pathfinder Energy Services, Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011) ("whether the impairment substantially limits a major life activity is ordinarily a question of fact for the jury.").

Defendant next argues that plaintiff has not made a prima facie showing that he was a "qualified individual" who, "with or without reasonable accommodation, can perform the essential functions" of his position because his medical restrictions prevented him from performing the essential functions of a Bus and Truck Mechanic. "An essential function is a fundamental job duty required of a person in the job; a marginal duty is not an essential function." *Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015) (citing 29 C.F.R. § 1630.2(n)(1)). EEOC regulations provide that evidence of whether a particular function is essential includes:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;

> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

Defendant points to the written Bus and Truck Mechanic position description and the testimony of its witnesses to establish that bending, twisting, kneeling, squatting, and lifting were among the essential functions of plaintiff's job. It is true that the job description states that the position requires lifting raw materials up to 50 pounds, as well as stooping, kneeling, crouching and crawling, *see* Mastriani Dep. at Exh. 1, Def.'s L.R. 56.1 Stmt., Exh. A, and that at least one witness stated that Bus and Truck Mechanics indeed have to perform these physical tasks. Laski Dep. at 31-32, 42-43, 48, Def.'s L.R. 56.1 Stmt., Exh. E. While this evidence is certainly relevant to whether these functions are essential, it is not dispositive. *See Shell*, 789 F.3d at 719. Indeed, plaintiff testified that he performed some of these functions only "rarely" or "occasionally," and that he never had to perform others, undercutting defendant's claim that the functions were essential. *See* Mastriani Dep. at 79:1-80:4, Pl.'s L.R. 56.1 Stmt., Exh. A. At all events, plaintiff's first restriction--evidently the only one at issue--prevented him only

8

from "repetitive" trunk function and trunk rotation, and is not, on its face, inconsistent with occasional kneeling, bending, crouching, or crawling. I note that defendant does not argue that any of the other restrictions identified in Dr. Heyer's letter--including plaintiff's need to take controlled pain medication after work--prevented him from performing any essential function of his job.

With respect to the lifting limitation noted on plaintiff's physical capacity evaluation form (i.e., that he could lift up to 40 pounds only occasionally), plaintiff proffered evidence that "wheel dollies" and hoists were used to assist mechanics with any heavy lifting that was required. *See* Olsen Declaration at ¶ 5, Pl.'s L.R. 56.1 Stmt., Exh. H. Plaintiff further testified that because Bus and Truck Mechanics work in teams of two—a point defendant does not meaningfully dispute—he could ask his partner to help with tasks that would require heavy lifting. Defendant tries to leverage this testimony into an admission that plaintiff's requested accommodation was unreasonable, citing *E.E.O.C. v. AutoZone, Inc.*, 809 F.3d 916 (7th Cir. 2016). It is true that in that case, the court held that the plaintiff's requested accommodation, which would have amounted to "essentially delegating" the position itself to another employee, was unreasonable. *Id*. at 923. In this case, however, the factual dispute regarding which functions were essential, as

9

well as plaintiff's evidence regarding how two-person teams typically worked together to complete their duties, makes summary judgement inappropriate on the basis that plaintiff's accommodation request is per se unreasonable. *See Miller v. Illinois Dept. of Transp.*, 643 F.3d 190, 198 (7th Cir. 2011).

### III.

For the foregoing reasons, defendant's motion for summary judgment is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 7, 2016